CHARLES R. THOMAS, Plaintiff-Appellant, *v.* THE ZONING BOARD OF
APPEALS FOR THE CITY OF PEORIA *et al.*, Defendants-Appellees.

Third District   No. 78-256

Opinion filed June 12, 1979.—Rehearing denied July 17, 1979.

James R. Brodie, of Pekin, for appellant.

Henry E. Mueller, Assistant Corporation Counsel, and Raymond J. Fraser, both of Peoria, for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Plaintiff Charles Thomas appeals from an order of the Peoria Zoning Board of Appeals which denied him a building permit to remodel a theater building and also denied his request for a variance from off-street parking requirements.

In 1976 plaintiff purchased a theater building in an area of Peoria zoned C-2, a neighborhood commercial district. The building occupied the entire lot with no space for parking on the premises and had been used as the Avon motion picture theater from 1937 until 1956. The building has a marquee, a lobby, a balcony, a projection booth, and a sloping floor located underneath a terraced floor. After standing vacant until 1970, it was remodeled and opened as a restaurant and night club where movies and old slides were shown during breaks in the live entertainment. This operation continued until the building was sold to Thomas by Larry Warner, the owner.

City records indicate that Warner last had a city amusement license in 1974 when he was issued a class 1 theater license for live entertainment. In March of 1976, Warner submitted applications for both 1975 and 1976 licenses but both requests were denied because they were late.

Plaintiff applied for a building permit for the purpose of remodeling the building to restore the original sloping floor and attached seats for the showing of movies and to upgrade the interior to conform to city building code requirements, but the permit was denied for failure to provide

off-street parking as required by the city's zoning ordinance. Plaintiff then appealed to the Zoning Board of Appeals, claiming exemption from parking requirements under the ordinance, and in the alternative, seeking a variance from the parking regulation. The Zoning Board conducted a hearing on November 17, 1976, as to the propriety of the denial of a building permit. A separate hearing was held on December 10, 1976, on plaintiff's application for a parking variance. The Board denied both the building permit and the parking variance, and upon administrative review the circuit court affirmed. Plaintiff then perfected this appeal.

Plaintiff first contends that the Peoria zoning ordinance, if correctly interpreted, allows the building in question to be used as a movie theater without provision for off-street parking. Two pertinent sections of the ordinance concern nonconforming uses and are as follows:

"2—20.4000 Nonconforming uses of structures. If a lawful use of a structure, or of structure and premises in combination, exist at the effective date of adoption of this ordinance, that would not be allowed in the district under the terms of this ordinance, the lawful use may be continued so long as it remains otherwise lawful, subject to the following provisions:

2—20.4005 If a nonconforming use has been discontinued for a period of one year or more, it shall not be re-established, unless the nonconforming use was in a building designed, arranged and intended for such use."

Plaintiff reasons that he is actually seeking to re-establish a nonconforming use that had been discontinued for more than one year, that his nonconforming use was in a building "designed, arranged, and intended for such use," i.e., as a motion picture theater, and therefore that his proposed theater qualifies for the exception set out in section 2—20.4005.

■■ The fatal flaw in plaintiff's theory is that a motion picture theater is a permitted use in a C-2 district, and the only nonconformance is the absence of off-street parking facilities. Consequently, his proposed theater is not a nonconforming use in a building designed, arranged and intended for such use so as to come within the exception of section 2—20.4005, but rather is a permitted use of the building on nonconforming premises.

Section 2—22.1000 provides, inter alia, that no change in use shall be made to an existing commercial building or structure "unless there already is in existence upon the lot, or provision is made for the location on the lot, concurrently with the * * * change in use, off-street parking facilities comprising adequate access drives or aisles or parking spaces" on the basis of certain minimum requirements which include, for a theater, one parking space for each four seats. Clearly, plaintiff is

proposing a change in use from restaurant-night club to a motion picture theater, and plaintiff is therefore required to provide off-street parking facilities. The plain language of the ordinance mandates the denial of a building permit to plaintiff, and neither the Board nor the circuit court erred in so construing the ordinance.

Plaintiff's second contention is that the off-street parking requirements are unconstitutional as applied to plaintiff's property because great hardship would be imposed on the property owner as compared to the relatively small gain to the public. Plaintiff cites those cases which held a zoning classification to be unconstitutional as applied to a particular parcel of real estate. For example, in *Marquette National Bank v. County of Cook* (1962), 24 Ill. 2d 497, 182 N.E.2d 147, the landowner established that his property could not be economically developed as a subdivision under an R-3 zoning classification which had 20,000 square feet minimum lot area requirements; that an R-4 classification with 10,000 square feet minimum would be feasible; that there was no substantial gain to the public in the R-3 zoning; and that there was a real hardship imposed on the owners. In describing the standard to be applied, the court said:

> "A zoning classification will be upheld if it bears a substantial relation to the public health, safety, comfort, morals and welfare. Where the question of its reasonableness as applied to a particular parcel of property is subject to a fair difference of opinion, the legislative judgment of the zoning authority should be followed. The presumption of validity is overcome, however, when it is shown that there is no reasonable basis in public welfare requiring the restriction and the resulting loss. Where the gain to the public is small as compared to the hardship imposed upon the owner, no valid basis for the exercise of police power exists. [Citation.]
>
> It is not the mere loss of value alone that is significant in this case, but it is the fact that the public welfare does not require the restriction and resulting loss. When it is shown that no reasonable basis of public welfare requires the limitation or restriction and resulting loss, the ordinance fails and the presumption of validity is dissipated. [Citation.]" 24 Ill. 2d 497, 501-02.

Applying this test to the parking requirements of the Peoria zoning ordinance, we cannot say that those requirements are unreasonable as applied to plaintiff's property. The public welfare is obviously served by the elimination of traffic congestion and by provision for off-street parking. Plaintiff introduced evidence that the private parking lots of other businesses in the neighborhood were not full at night or on weekends and that as a result, those lots plus the on-street spaces would be available to his patrons, and he argues that the public welfare does not,

therefore, require him to provide off-street parking. He also says that his building is worth $70,400 as a theater but would otherwise be obsolete and would have a salvage value of about $16,000.

▪▪ Plaintiff's evidence relating to his hardship and to the public welfare was contradicted by evidence introduced by objectors. Owners of other businesses in the vicinity referred to the inherent unfairness of plaintiff's desire to be excused from providing parking spaces after they had been required to expend funds to furnish parking for their businesses. The Board found that plaintiff failed to prove hardship, apparently because of the evidence that plaintiff purchased the building with full knowledge of the parking requirements and because he failed to establish that space for parking could not be acquired. After considering the evidence contained in the record, we find that plaintiff failed to meet his burden of proving the ordinance to be arbitrary and unreasonable as applied to him.

▪▪ Also asserted as error is the failure of the Board to make findings of fact to support the denial of a building permit as required by law. (See, e.g., Vahle v. Zoning Board of Appeals (3d Dist. 1968), 97 Ill. App. 2d 165, 239 N.E.2d 865.) Examination of the record reveals that two separate hearings were held: one on November 17, 1976, to consider the denial of a building permit and the second on December 9, 1976, to consider the request for a variance. At the conclusion of the second hearing, the Board adopted a resolution denying both of plaintiff's requests. The resolution stated, in part, "[I]t appearing to the Board, among other things, that there are no practical difficulties or particular hardship in the way of carrying out the strict letter of the regulations of the zoning ordinance of the City of Peoria, or that the plight of the owner is due to unique circumstances." A short time later plaintiff was sent a copy of specific findings of fact relating to his failure to establish hardship.

Plaintiff apparently regards this proceeding as involving two separate causes and thus requiring two separate findings of fact. We do not agree. The second hearing was actually a continuation of the first hearing. One order was entered by the Board; one appeal was taken to the circuit court; one judgment was entered there; and one appeal was taken to this court. We conclude that the one set of findings of fact was all that was required, and that the Board's findings were sufficient to support the Board's ruling.

Next, plaintiff contends that he was denied a fair and impartial hearing by the Board. He cites certain statements by Board members as indicating a strong and obvious bias against defendant, and he further argues that the city administration was prejudiced against him because of plaintiff's prior conviction, since reversed, for showing obscene films. We have carefully examined the record, and as best we can discern, plaintiff was given ample opportunity to present evidence, to call witnesses, to cross-examine witnesses, and to advance arguments in support of his

position. One of the statements he complains of was made by the assistant city attorney who said that he wanted an error-free record. This statement was certainly not indicative of bias but instead reflects a laudable goal. Without belaboring this issue by discussing each statement which plaintiff has pointed to as showing bias, we think it sufficient to observe that these comments of the Board members were susceptible of more than one meaning and do not establish any unfairness. From the record, it is clear that the chairman refused to allow objectors to comment upon the type of movies plaintiff was expected to exhibit but instead insisted that only the parking issue be discussed. In summary, we find that plaintiff received a fair and impartial hearing.

■■■ Plaintiff also asserts that he acquired a vested property right in the issuance of a building permit and that the city is estopped to deny him a permit because the off-street parking regulation was not enforced against the prior owner, a fact which plaintiff relied upon when he bought the building. This argument is without merit. As a general rule, in matters involving strictly public rights, courts will not hold a municipality estopped unless the complainant was induced to expend substantial sums by the conduct of municipal officers. (*Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 171 N.E.2d 605.) Furthermore, the conduct which served as an inducement must be an affirmative act on the part of an elected municipal officer. (*Lake Shore Riding Academy, Inc. v. Daley* (1st Dist. 1976), 38 Ill. App. 3d 1000, 350 N.E.2d 17.) Nothing in the case at bar could be considered an affirmative act on the part of a city officer which could have induced plaintiff to purchase the building. Hence the city is not estopped to deny plaintiff a permit.

■■ Finally, plaintiff complains that the board's decision was contrary to the manifest weight of the evidence. He reasons that the building permit was improperly denied because the evidence established a continuation of use as a theater since movies were shown in the night club which followed the Avon motion picture business. This point was considered earlier, and we think the evidence overwhelmingly supports the Board's finding that the use of the building was previously a nontheater use and that plaintiff's proposal would be a change in use to a motion picture theater. The incidental and occasional showing of films in a night club does not change the night club into a movie house any more than an occasional showing of a Billy Graham Crusade film would convert a cabaret into a church.

Plaintiff also claims to have established that the proposed variance was in harmony with the general purpose and intent of the ordinance and would alleviate a demonstrable hardship, as required by section 2—25.3000 of the ordinance (authority for variances) and also would prevent an unreasonable hardship as required by section 2—25.3009 (authority for

waiver of parking requirements). In view of the evidence in the record, we cannot accept plaintiff's argument. Plaintiff admittedly knew of the parking requirements when he purchased the property. Although plaintiff's architect testified that the building could not be used for any purpose other than a theater, clearly the building was remodeled to accommodate a restaurant and night club business which operated for six years. Without setting out all of the evidence, we think it obvious that the decision of the Board had substantial foundation in the evidence and was not arbitrary or an abuse of discretion.

■ At the time of oral argument plaintiff filed a motion to supplement his brief by adding section 2—20.5000 of the Peoria zoning ordinance. Defendants objected on the ground that plaintiff was attempting to raise a new issue which would be untimely. We have taken the motion and objections with the case, and we have concluded that the motion should be granted since plaintiff cites it to rebut an argument advanced by defendants. The section to be added concerns nonconforming use changes and provides that once a building or land is changed to a conforming use, it shall not be permitted to revert to a nonconforming use. This section is inapplicable to the facts here where the premises have never conformed to the parking requirements. Instead, as noted earlier, section 2—22.1000 controls in this case.

For the reasons stated, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

STOUDER, P. J., and SCOTT, J., concur.